**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIELLE BELL, individually and all behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY ENERGY SERVICES CORPORATION and DIRECT ENERGY SERVICES, INC.,<br><br>Defendants. | Civil Action No. _____<br><br>Class Action Complaint |

Plaintiff Danielle Bell, by her attorneys, Kohn, Swift & Graf, P.C., as and for her class action complaint, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, as follows:

## NATURE OF THIS CASE

1. This action seeks to redress the deceptive pricing practices of Gateway Energy Services Corporation ("Gateway") and Direct Energy Services Corporation ("Direct Energy"), (collectively "Defendants"), that have caused thousands of New York consumers to pay considerably more for their natural gas and/or electricity than they should otherwise have paid.

2. Defendants have taken advantage of the deregulation of the retail natural gas and electricity markets in New York by luring consumers into switching energy suppliers with false promises that it offers market based variable rates for natural gas and electricity.

3. Defendants' representations are deceptive. In fact, Defendants' variable rates are substantially higher than those otherwise available in the energy market, and their rates do not reflect changes in the wholesale cost Defendants pay for the natural gas and electricity they

supply to their retail customers. As a result, New York consumers are being fleeced millions of dollars in exorbitant charges for natural gas and/or electricity.

4. This suit is brought pursuant to N.Y. G.B.L. § 349 and N.Y. G.B.L. § 349-d and the common law of New York on behalf of a class of consumers who purchased natural gas and/or electricity from Defendants from 2014 to the present. It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, attorneys' fees, and the costs of this suit.

## PARTIES

5. Plaintiff Danielle Bell is a citizen of New York residing in New City, New York. Ms. Bell was a customer of Gateway from approximately 2011 through April 2017, and as a result of Defendants' deceptive conduct, she incurred excessive charges for natural gas and electricity.

6. Defendant Direct Energy Services, LLC is a Delaware limited liability company with its principal place of business at 12 Greenway Plaza Suite 250, Houston, Texas 77046.

7. Defendant Gateway Energy Services Corporation is a New York company, having been organized under the laws of New York, and with a principal place of business or corporate headquarters in Montebello, New York, in Rockland County.

8. In or around 2011, Direct Energy acquired Gateway Energy Services. Defendants have thousands of customers in New York, and they have tens of millions of dollars in combined revenues.

9. Gateway is an energy services company with market-based authority to sell at retail electricity and natural gas to residential and commercial end users in New York and other jurisdictions.

## JURISDICTION

10. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (the "Class Action Fairness Act").

11. This action meets the prerequisites of the Class Action Fairness Act, because the claims of the Class defined below exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

12. This Court has general personal jurisdiction over Defendant Direct Energy because Direct Energy has been doing business in New York through continuous, permanent, and substantial activity in New York.

13. This Court has personal jurisdiction over Defendant Gateway because it is headquartered and conducts substantial business in this judicial district.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). Substantial acts in furtherance of the alleged improper conduct occurred within this District and Plaintiff Bell resides within this District.

## OPERATIVE FACTS

15. In 1996, New York deregulated the market for retail natural gas and electricity supply, a major break with past policy. Prior to deregulation, gas and electricity were supplied and distributed solely by local utility companies. Over the last several years, a number of states, including New York, have begun to change the regulations in the energy industry purportedly to enhance competition between energy providers. The notion is that competition would result in independent energy companies ("ESCOs") being more aggressive than the utility in reducing wholesale purchasing costs and thereby lower retail residential rates.

{00168892 }                                  3

16. As part of the deregulation plan, ESCOs (like Defendants) do not have to file the natural gas and electricity rates they charge with the New York State Public Service Commission ("NYPSC") or the method by which they set their rates.

17. If a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility. The customer's existing utility continues to bill the customer for both the energy supply and delivery costs. The only difference to the customer is which company sets the price for the customer's energy supply.

18. After a customer switches to an ESCO, the customer's energy supply charge—based either on a customer's kilowatt hour (for electricity) or therm or ccf (for gas) usage—is calculated using the supply rate charged by the ESCO and not the regulated rate charged by customer's former utility. The supply rate charged is itemized on the customer's bill as the number of kilowatt hours ("kWh") or therms (or ccf) multiplied by the rate. For example, if a customer uses 300 kWh at a rate of 11.0¢ per kWh, the customer will be billed $33.00 (300 x $.11) for his or her energy supply.

19. Defendants take advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge New York consumers exorbitant rates for natural gas and electricity. In theory, energy deregulation allows consumers to shop around for the best energy rates. However, Defendants exploit deregulated markets, by using the false promise of savings in order to deceive consumers into purchasing energy from them. In fact, Defendants' rates are substantially higher than other ESCOs or local utilities.

20. Defendants lure consumers to switch from their local utility companies or other energy suppliers, promising that they will receive lower competitive rates resulting in savings on their monthly bills. Defendants' scheme falsely promises lower energy rates based on

competitive market rates. However, in reality, after switching to Defendants as a supplier, consumers' energy bills increase dramatically.

21.     The NYPSC has taken note of the deceptive acts and practices among ESCOs in New York. In 2016, the NYPSC stated that after considerable experience with energy service to mass market customers by ESCOs, it determined that the retail markets serving mass-market customers are not providing sufficient competition or innovation to properly serve consumers. As a result, the NYPSC is opening an evidentiary hearing to examine measures that must be taken to ensure that these customers can pay just and reasonable rates for commodity and other services from ESCOs.[1]

22.     In 2011, Defendants mailed to Ms. Bell a letter enticing her to switch from her local utility, Orange and Rockland, to Defendants' natural gas and electricity service. The letter contained a phone number, which Ms. Bell called. In the telephone conversation in which the representative used a sales pitch, Defendants informed Ms. Bell that she would save money on her energy bills if she switched to Defendants' natural gas and electricity service.

23.     In 2011, Plaintiff made the switch to Defendants for natural gas and electricity.

24.     Plaintiff's contract with Defendants was set to expire in 2014, so Plaintiff entered into a new two-year contract for electricity and natural gas.

25.     On December 17, 2014, Defendants sent Ms. Bell a letter in the mail containing the Terms and Conditions that applied to her natural gas and electricity services.

26.     Plaintiff was initially placed on a fixed rate plan for natural gas and electricity, but she was switched to a variable rate plan without any notice.

---

[1] *See* http://documents.dps.ny.gov/search/Home/ViewDoc/Find?id=%7BF3E31C9F-5A4F-4B3E-AE5E-3624B3D691BA%7D&ext=pdf (accessed on May 22, 2017).

27. The representation that Defendants' variable rate would be based on market prices was reinforced by Defendants' standard Residential Terms & Conditions, which was mailed to Plaintiff. The Terms & Conditions (attached as Exhibit "A") represents that the variable rate for all natural gas and/or electricity "is set each month based on our evaluation of market conditions." Market conditions that Defendants might consider include, "the prevailing price of natural gas or electricity on the market, costs involved in moving the gas or electricity from the producer to your utility, our total acquisition costs for the electricity or natural gas (including, where applicable, transmission costs, storage costs, transportation costs and line losses) and the prevailing rates offered by your utility and other competitors."

28. Defendants also enclosed with the Terms & Conditions provided to Plaintiff a letter stating, "Gateway remains dedicated to your complete satisfaction by providing you with ***competitive energy prices***, attractive pricing plans, and excellent customer service." (emphasis added). Plaintiff received a letter explaining her natural gas rate (attached as Exhibit "B-1") and a letter explaining her electricity rate (attached as Exhibit "B-2"). Each letter contained identical representations made by Defendants, particularly that Plaintiff would be provided with "competitive energy prices." *See* Exhibits B-1 and B-2.

29. Any reasonable consumer would understand based on these representations that Defendants' variable rates would be competitive with the rates offered by the local utility and other ESCOs. Ms. Bell reasonably expected that Defendants' variable rates for natural gas and electricity would be based on market conditions, i.e., competitive and reflective of the prevailing price of natural gas or electricity on the market and the prevailing rates offered by Ms. Bell's former utility and other competitors in the market.

30. Ms. Bell paid Defendants' variable rate from 2014 until approximately May 2017. On May 18, 2017, Ms. Bell cancelled her electricity and natural gas service with Defendants.

{00168892 }                                6

The following table is a representative sampling which identifies the billing periods during this time, the variable rates Defendants' charged Plaintiff, and the corresponding rates Orange & Rockland would have charged for electricity and natural gas natural gas (which is a reasonable representation of the available market rates):

**Electricity**

| Billing Period | Defendants' Rate | Orange and Rockland Rate |
|---|---|---|
| 4/2016-5/2016 | 12.39/KWH | 5.650/KWH |
| 5/2016-6/2016 | 12.626/KWH | 8.365/KWH |
| 6/2016-7/2016 | 12.99/KWH | 8.442/KWH |
| 7/2016-8/2016 | 12.99/KWH | 8.411/KWH |
| 8/2016-9/2016 | 12.99/KWH | 8.469/KWH |
| 9/2016-10/2016 | 12.99/KWH | 6.727/KWH |
| 10/2016-11/2016 | 13.0971/KWH | 6.080/KWH |
| 11/2016-12/2016 | 13.29/KWH | 7.335/KWH |
| 12/2016-1/2017 | 13.29/KWH | 7.731/KWH |
| 1/2017-2/2017 | 13.29/KWH | 8.377/KWH |
| 2/2017-3/2017 | 13.29/KWH | 8.049/KWH |
| 3/2017-4/2017 | 7.890/KWH | 4.557/KWH |

**Natural Gas**

| Billing Period | Defendants' Rate | Orange and Rockland Rate |
|---|---|---|
| 4/2016-5/2016 | 73.00/CCF | 17.111/CCF |
| 5/2016-6/2016 | 73.906/CCF | 20.091/CCF |
| 6/2016-7/2016 | 74.043/CCF | 19.276/CCF |
| 7/2016-8/2016 | 72.4080/CCF | 23.525/CCF |
| 8/2016-9/2016 | 74.0236/CCF | 19.359/CCF |
| 9/2016-10/2016 | 76.2/CCF | 19.203/CCF |
| 10/2016-11/2016 | 78.95/CCF | 21.803/CCF |
| 11/2016-12/2016 | 83.9/CCF | 21.112/CCF |
| 12/2016-1/2017 | 83.90/CCF | 29.655/CCF |
| 1/2017-2/2017 | 83.8756/CCF | 41.642/CCF |

31. While local utilities' rates may demonstrate less fluctuation over that of the wholesale market, over time, the rates utilities like Orange and Rockland charge are an accurate reflection of rates that are based on prevailing market conditions. In other words, the electricity and gas rates that utilities charge are an accurate measure of what market based rates should be. That Defendants rates were substantially higher than the local utilities' rates therefore demonstrates that Defendants' rates are not in fact based on prevailing market conditions. Indeed, there are numerous months where Defendants' rates were *more than double* Orange and Rockland's rates.

32. A reasonable consumer would understand that the price the local utility or other ESCO charges is part of prevailing market conditions and that a priced based on prevailing market conditions would be consistent with the price charged by the local utility or other ESCO. However, Defendants' prices are substantially higher than local utilities rates, as well as the rates other ESCOs charge.

33. Thus, Defendants' statements with respect to the natural gas and electricity rates they will charge are materially misleading because consumers do not receive a price based on market conditions. Instead, consumers are charged rates that are substantially higher. Defendants fail to disclose this material fact to their customers.

34. Defendants' statements regarding their natural gas and electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about Defendants' exorbitant rates would choose Defendants as a natural gas and/or electricity supplier.

35. In fact, all that Defendants offer customers is natural gas and/or electricity delivered by local utilities, a commodity that has the exact same qualities as natural gas and/or

{00168892 } 8

electricity supplied by other ESCOs or local utilities. Other than potential price savings, there is nothing to differentiate Defendants from other ESCOs or local utilities, and the potential for price savings is the only reason any reasonable consumer would enter into a contract for natural gas supply and/or electricity with Defendants.

36. Defendants know full well that they charge a rate that is unconscionably high, and the misrepresentations they make with regard to the rate being market based were made for the sole purpose of inducing consumers to sign up for Defendants' natural gas and/or electricity supply so that they can reap outrageous profits to the direct detriment of New York consumers without regard to the consequences high utility bills cause such consumers. As such, Defendants' actions were actuated by actual malice or accompanied by wanton and willful disregard for consumers' well-being.

37. Defendants' misstatements and omissions caused injury to Plaintiff because she believed that she would be saving money by switching from Orange and Rockland to Defendants' natural gas and electricity plans. Plaintiff would not have enrolled in Defendants' plans but for their false misrepresentations. Had Plaintiff known that the rates she would be charged by Defendants would be substantially higher than her local utility provider, she would not have made the decision to switch.

38. Similarly, other Class members have routinely paid substantially more for their energy supplies since switching to Defendants, and have not received any savings benefits.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class of all of Defendants' New York State customers who were charged a variable rate from 2014 to the present.

{00168892 }                                        9

40. Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of Defendants.

41. This action is brought as a class action for the following reasons:

    a. The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

        i. whether Defendants violated N.Y. G.B.L § 349 and N.Y. G.B.L § 349-d;

        ii. whether Defendants breached their contract with New York consumers by charging variable rates not based on market conditions;

        iii. whether Defendants breached the covenant of good faith and fair dealing by exercising its unilateral price-setting discretion in bad faith, i.e., to price gouge;

        iv. whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

        v. whether Defendants should be enjoined from continuing to charge variable rates not based on market conditions;

    c. The claims asserted by Plaintiff are typical of the claims of the members of the Class;

    d. Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

{00168892 }    10

e. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

f. Defendants have acted on grounds that apply generally to the Class, namely representing that its variable rates are based on market conditions, i.e., competitive and reflective of the wholesale market, when Defendants' rates are in fact substantially higher, so that final injunctive relief prohibiting Defendants from continuing its deceptive practices is appropriate with respect to the Class as a whole;

g. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i. Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii. When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv. A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions;

v. The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi. Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

42. Defendants' violations of N.Y. G.B.L § 349 and N.Y. G.B.L § 349-d and the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendants enjoined from engaging in illegal and deceptive conduct in the future.

## FIRST CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349)

43. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

44. The New York General Business Law § 349 provides, *inter alia*:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

N.Y. Gen. Bus. Law § 349(a).

45. Defendants' misrepresentations and false, deceptive, and misleading statements with respect to the rates they charge for electricity and natural gas, as described above, constitute deceptive acts and practices in the conduct of business, trade, or commerce in violation of the New York General Business Law.

46. Defendants failed to inform customers that their rates are substantially higher than those based on the market price and rate of electricity and/or natural gas. That information would have been material to any consumer deciding whether to purchase electricity and/or natural gas from Defendants.

47. Plaintiff and the other members of the Class entered into agreements to purchase electricity and/or natural gas from Defendants for personal, family or household use and suffered ascertainable loss as a direct and proximate result of Defendants' actions in violation of the New York General Business Law.

48. As a consequence of Defendants' wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable loss of monies based on the difference in the

rates they were charged versus the rates they would have been charged had Defendants charged rates based on the market price and rate of electricity and/or natural gas or had they not switched to Defendants from their previous utility provider.

49. Plaintiff and the other members of the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have entered into agreements to purchase electricity and/or natural gas from Defendants if the true facts concerning their rates had been known.

50. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for actual damages or $50.00 for each violation, whichever is greater; punitive damages; injunctive relief, attorneys' fees, and the costs of this suit.

51. Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff and the other members of the Class. Defendants are therefore additionally liable for punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349-d)

52. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

53. N.Y. G.B.L. § 349-d(3) provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services."

54. N.Y. G.B.L. § 349-d(l0) provides that "any person who has been injured by reason of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars,

whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff."

55. Defendants knowingly and willfully misrepresented to Plaintiff and the Class that their rates are competitive and reflective of wholesale natural gas and electricity costs prevailing in the market when their rates are not, in fact, reflective of the market.  Defendants knowingly and willfully fail to inform consumers of the material fact that their rates are substantially higher than those otherwise available in the market.

56. Through their conduct described above, Defendants have engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

57. By reason of the foregoing, Defendants have violated N.Y. Gen. Bus. Law § 349-d, and should be enjoined from continuing to fail to disclose that their rates are substantially higher than those otherwise available in the market, that they do not deliver savings, and misrepresenting that their rates are competitive and reflective of market factors.  Defendants are also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial but not less than $500.00 for each violation, such damages to be trebled, plus attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**(Breach of Contract)**

58. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

59. Plaintiff and the Class entered into valid contracts with Defendants for the provision of natural gas and/or electricity.

60. Pursuant to the Agreements, Defendants agreed to charge a variable rate for natural gas and/or electricity purportedly based on market conditions.

61. Pursuant to the Agreements, Plaintiff and the Class paid the variable rates charged by Defendants for natural gas and/or electricity.

62. However, Defendants failed to perform their obligations under the Agreements because they charged variable rates for natural gas and/or electricity that were not based on the factors upon which the parties agreed the rates would be based.

63. Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for natural gas and/or electricity that was higher than they would have been had Defendants based their rates on the agreed upon factors.

64. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith & Fair Dealing)

65. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

66. Every contract in New York contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

67. Under the contract, Defendants had unilateral discretion to set the variable rates for natural gas and/or electricity based on market conditions and other factors.

68. Plaintiff reasonably expected that the variable rates for natural gas and/or electricity would reflect the market and wholesale prices for natural gas and electricity and that Defendants would refrain from price gouging.  Without these reasonable expectations, Plaintiff and other Class members would not have agreed to buy natural gas and/or electricity from Defendants.

69. Defendants breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising their unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Class members' reasonable expectations that the variable rates for natural gas and/or electricity would be commensurate with market conditions.

70. As a result of Defendants' breach, Defendants are liable to Plaintiff and other Class members for actual damages in an amount to be determined at trial and attorney's fees.

### FIFTH CAUSE OF ACTION
(Unjust Enrichment)

71. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

72. By engaging in the conduct described above, Defendants have unjustly enriched themselves and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the other members of the Class.

73. It would be unjust and inequitable for Defendants to retain the payments Plaintiff and the Class made for excessive natural gas and/or electricity charges.

74. By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of which shall be determined at trial, plus attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendants as follows:

1. Certifying this action as a class action, with a Class as defined above;

2. On Plaintiff's First Cause of Action, awarding against Defendants damages that Plaintiff and the other members of the Class have suffered, trebled, and granting appropriate injunctive relief;

3. On Plaintiff's Second Cause of Action, awarding against Defendants damages that Plaintiff and the other members of the Class have suffered, trebled, and granting appropriate injunctive relief;

4. On Plaintiff's Third Cause of Action, awarding against Defendants damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions;

5. On Plaintiff's Fourth Cause of Action, awarding against Defendants damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions;

6. On Plaintiff's Fifth Cause of Action, awarding against Defendants damages and/or injunctive relief that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions;

7. Awarding Plaintiff and the Class punitive damages;

8. Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

9. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

//

//

//

//

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: May 23, 2017

Respectfully Submitted By:

/s/ Jonathan Shub_____
Jonathan Shub (N.Y. Bar # 4747739)
Kevin Laukaitis (*Pro Hac Vice Forthcoming*)
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
(215) 238-1700 – phone
(215) 238-1968 – facsimile
jshub@kohnswift.com
klaukaitis@kohnswift.com

Nick Suciu III (*Pro Hac Vice Forthcoming*)
BARBAT, MANSOUR & SUCIU PLLC
1644 Bracken Road
Bloomfield Hills, Michigan 48302
(313) 303-3472 – phone
nicksuciu@bmslawyers.com

*Attorneys for Plaintiff and the Putative Class*