| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>:<br>DANIELLE BELL, ERIN HITCHNER, and :<br>JONATHAN W. WALKER, individually and on :<br>behalf of all others similarly situated :<br>:<br>                             Plaintiffs, :<br>:<br>                   -v- :<br>:<br>GATEWAY ENERGY SERVICES :<br>CORPORATION and DIRECT ENERGY :<br>SERVICES, LLC, :<br>:<br>                             Defendants. :<br>:<br>------------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>November 29, 2017</u><br><br><br>17-cv-3893 (KBF)<br><br>OPINION & ORDER |

KATHERINE B. FORREST, District Judge:

      On May 23, 2017, plaintiffs commenced this purported class action against two energy providers, Gateway Energy Services Corp. ("Gateway") and Direct Energy Services, LLC ("Direct Energy") (collectively, "defendants"). Plaintiffs[1] allege in sum that they were misled into contracting with Gateway for energy services by certain false promises. This Opinion & Order does not address the general sufficiency of plaintiffs' substantive allegations. It is directed instead to the threshold issue, raised by defendants in their respective motions to dismiss, of whether this Court has subject matter jurisdiction over plaintiffs' claims. Because it is clear that this Court does not, defendants' motions to dismiss at ECF Nos. 41

---

[1] Danielle Bell and Erin Hitchner are the only proper plaintiffs in this action. Jonathan W. Walker's sole connection to the case is his marriage to Erin Hitchner—he has not himself contracted with either defendant. Accordingly, there can be no doubt that he has no standing to participate in this action.

and 42 are accordingly GRANTED on that basis.

I.  DISCUSSION

Two legal principles are dispositive of this motion: first, that in order to join a defendant in an action, some plaintiff must have a claim against it; and second, that a federal court must have subject matter jurisdiction over an action in order to entertain it.

   A.  Direct Energy Must Be Dismissed

The first principle recited above—that in order to join a defendant in an action, some plaintiff must have a claim against it—requires dismissal of Direct Energy, a New Jersey Corporation. No plaintiff has asserted that he or she directly contracted for services with Direct Energy, or that he or she was injured by actions of Direct Energy. The alleged injurious misrepresentations were all made by its affiliated entity, Gateway. To get around this plain deficiency, plaintiffs assert that Direct Energy acquired Gateway in 2011, and that Gateway has served as an "alter ego" of Direct Energy since that time. (See Second Amend. Compl. ("SAC") ¶¶ 9, 23-35, ECF No. 27.) It is unclear whether plaintiffs' invocation of the alter ego doctrine is meant to demonstrate that (1) Gateway is an "agent" of Direct Energy; (2) Gateway is some sort of "shell" entity; or (3) that this Court should "pierce the corporate veil" and hold Direct Energy liable for Gateway's alleged misconduct following judgment. But in any event, it is clear to this Court that Gateway's allegations in the SAC are missing a key component necessary to keep Direct Energy in this case.

2

Plaintiffs have alleged that Gateway and Direct Energy are separate corporate entities, with separate places of incorporation and separate principle places of business. (SAC ¶¶ 7,8.) Plaintiffs also allege that Direct Energy "dominates" Gateway (Id. ¶ 24), that Gateway "does not maintain separate corporate books and records" (Id. ¶ 25), that Gateway's finances are "inextricable" from those of Direct Energy (Id. ¶ 26), that Gateway does not have its own directors, corporate officers or employees (Id. ¶ 28), that Direct Energy's officers and employees purchase natural gas and/or electricity on behalf of Gateway's customers (Id. ¶ 30), and that Direct Energy sets the variable rates for Gateway's customers by "integrating both companies' customers into one pricing model and considering them as a whole…" (Id. ¶ 32). But Gateway has completely failed to allege that Direct Energy's control "was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act." Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1053 (2d Cir. 1997) (quoting Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp., 833 F.2d 418, 424 (2d Cir. 1987));

It is true that "[c]ourts will pierce the corporate veil to prevent fraud or achieve equity by imposing a corporate obligation upon a parent." New York State Elec. and Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 229 (2d Cir. 2014) (citations omitted). "'But to successfully pierce the veil, a plaintiff must show both domination of the corporation and that 'such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" Id. (quoting Matter of Morris v. New York State Dept. of Taxation and Fin.., 82 N.Y. 2d

3

135, 141 (1993)); see also Wm Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991) (holding that the "three-factor rule" for piercing the corporate veil—which includes proof that "control has been used to commit fraud or other wrong"—is indistinguishable from an alter ego theory and does not lead to different results).

Here, plaintiffs' principle allegations of wrongdoing relate to alleged misstatements by Gateway, the contracting entity. Plaintiff Bell received mailings from Gateway in 2011 and again in 2014, setting forth terms and conditions that she claims were false and misleading. (SAC ¶ 41-44.) Hitchner similarly alleges that she received misleading solicitations from Gateway—the first of which she received prior to Direct Energy's acquisition of Gateway. (Id. ¶ 51.) These allegations create an important distinction between Gateway and Direct Energy's customers. There is no allegation in this case that: (1) Direct Energy was the contracting entity; (2) Direct Energy made any of the alleged misrepresentations; (3) Direct Energy directed Gateway to make the alleged misrepresentations; or (4) Direct Energy somehow used its domination and control of Gateway to make or facilitate the misrepresentations.[2]

In short, the allegations that Direct Energy dominates Gateway or even sets consumer prices fall short of asserting that Direct Energy injured these plaintiffs in any way. And clear precedent in this circuit holds that plaintiffs may not bring

---

[2] As to the final two points, the fact that Gateway is alleged to have made the misrepresentations prior to being acquired by Direct Energy is a strong indication that Direct Energy was not directing or facilitating the misconduct at issue here. (See SAC ¶ 51.)

4

class actions against non-injurious defendants, even when they are affiliates of one another.  See Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 63 (2d Cir. 2012).  Because the plaintiffs here—who contracted only with Gateway—have no direct claim against Direct Energy, and because they have no standing to assert any claims that might exist on behalf of Direct Energy's other (non-Gateway) customers, the Court concludes that Direct Energy must be dismissed as a defendant from this case.

B. The Court Lacks Subject Matter Jurisdiction as to Gateway

With Direct Energy dismissed from the case, the Court next turns to the question of whether it has subject matter jurisdiction over the claims against the one remaining defendant—Gateway.  The Court concludes that it does not.  This Court, like all federal courts, is one of limited jurisdiction.  It cannot hear a case unless it has subject matter jurisdiction over the claims asserted, and plaintiffs bear the burden on that issue.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Further, plaintiffs must carry their burden with respect to subject matter jurisdiction by a preponderance of the evidence.  Id.  When a factual challenge to the court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings."  Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

Plaintiffs assert the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the sole basis for jurisdiction.  (SAC ¶ 10.)  CAFA provides for federal jurisdiction over class actions when (1) the proposed class contains at least 100 members, (2) the amount in controversy exceeds $5 million, and (3) minimal diversity exists between

5

the parties (that is, where any member of the potential class is from a different state from any defendant). 28 U.S.C. § 1332(d); see also Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013).

There are three exceptions to CAFA's allowance for minimal diversity, one of which is discretionary (28 U.S.C. § 1332(d)(3)), and two of which are mandatory (28 U.S.C. § 1332(d)(4)(A)-(B)). At issue here are the mandatory exclusions, which are triggered, respectively, when: (1) greater than two-thirds of all proposed plaintiffs and at least one defendant (from whom "significant relief" is sought and whose "alleged conduct forms a significant basis" for the claims at issue) are citizens of the State in which the action was filed and "principal injuries resulting from the alleged conduct" occurred in that State (28 U.S.C. § 1332(d)(4)(A)); and (2) greater than two-thirds of all proposed plaintiffs and the "primary defendants" are citizens of the State in which the action was filed (28 U.S.C. § 1332(d)(4)(B)). The facts plainly demonstrate the applicability of both mandatory exclusionary provisions here.

As an initial matter, Direct Energy's contracting customers are irrelevant for purposes of this analysis for at least two reasons. First, as previously held, Direct Energy is dismissed as a defendant in this case. Therefore, any customers that purchase energy directly from Direct Energy, with no involvement from Gateway, clearly fall outside the proposed plaintiff class that remains. Second, even if this Court were to hold that Direct Energy should remain as a defendant in this case, it would be only with respect to customers that purchased energy through Gateway. None of the named plaintiffs contracted directly with Direct Energy, and there is no

6

allegation that any of Direct Energy's independent, non-Gateway customers were similarly wronged. Accordingly, Direct Energy customers that have no business relationship with Gateway are clearly not part of the proposed plaintiff class here, regardless of the Court's decision to dismiss Direct Energy.

As to CAFA's mandatory exclusionary rules, this case was filed in New York. Although Hitchner purchases electricity from Gateway in New Jersey, and Bell purchases natural gas from Gateway in New York, the uncontroverted analysis of Daniel Wood makes clear that more than two-thirds of the proposed plaintiff class (customers of Gateway) are resident in New York State, the same state in which this action was filed. (See Revised Decl. of Daniel Wood ("Revised Wood Decl."), ECF No. 55-1; see also Revised Wood Decl. Letter at 2, ECF No. 55.) Because Gateway is resident in New York, and because the "principal injuries resulting from the alleged conduct" occurred in New York, CAFA's exclusion set forth in 28 U.S.C. § 1332(d)(4)(A) applies, even if Direct Energy were to remain a defendant in this case.

Similarly, the Court concludes that CAFA's exclusion set forth in 28 U.S.C. § 1332(d)(4)(B) applies. As previously noted, it is clear from the SAC that Gateway is the "primary defendant" in this case. All of the plaintiffs contracted directly with Gateway, and Gateway is alleged to have made the actionable misrepresentations (some predating the acquisition by Direct Energy). Because greater than two-thirds of all proposed plaintiffs and Gateway are citizens of New York, which is the state this action was filed, 28 U.S.C. § 1332(d)(4)(B) applies and this Court has no

7

jurisdiction to hear the action.

Without CAFA, this Court lacks subject matter jurisdiction over plaintiffs' claims, and this case must be dismissed.

II. CONCLUSION

For the reasons set forth above, defendants' respective motions to dismiss the SAC at ECF Nos. 41 and 42 are GRANTED without prejudice.

The Clerk of Court is directed to terminate all open motions and to terminate this action.

SO ORDERED.

Dated:    New York, New York
            November 29, 2017

_____
KATHERINE B. FORREST
United States District Judge